The final matter today is December 15, 2189, Robert Harris v. Rosa Scarcelli, et al. May it please the Court, my name is Jim Muller. I represent Robert Harris and the matter before the Court today is Mr. Harris attempting to collect on a- Could you pull the mic closer to yourself? Certainly. Thank you. The issue before the Court today is whether or not Mr. Harris has the right to collect on a $300,000 real estate commission associated with the sale of some apartment buildings down in Millwork, Connecticut. My client was initially hired by Oak Knoll, the owner of the property back in 2009 by a listing agreement. He continued to work on this project trying to sell through two subsequent listing agreements until a listing agreement which the subject of the contract between the parties in May of 2011 came to be. That contract, as a result of that listing contract, my client was able to obtain a letter of commitment from a buyer by the name of Navarino and that was in June of 2011 and subsequently in October of 2011 the parties entered into a purchase and sale contract. The bankruptcy court held that there was no binding contract between the parties that would entitle Mr. Harris to a commission. If it please the Court, our position is that there was a binding purchase and sale contract on October 11, 2011 between Oak Knoll and Navarino to buy the property and according to the terms of the listing agreement, specifically paragraph four which reads, if during the term hereof, and the term was from May 16, 2011 through November of 2011, if during the term hereof or within six months from the termination of this agreement, should there be an acceptance of an offer to purchase or lease from the purchaser, the owner agrees to pay the agent a commission as per this agreement. Now the bankruptcy court interpreted that section incorrectly because the Court recognized that there was a possibility that Mr. Harris could receive a commission from obtaining a purchase and sale agreement, but the Court looked at that as obtaining a purchase and sale agreement after the termination of the agreement. The Court didn't interpret the contract, the listing agreement correctly to note that if during the term of the contract, the listing agreement, that if a purchase and sale contract was reached, that Mr. Harris would be entitled to a commission. The owner of the property, Oak Knoll, has asserted that and the bankruptcy court also found that a sale was required under the listing agreement, that it was essential that a sale occur for a, my client to be entitled to a commission. That is directly contrary to that provision of paragraph four that I've just pointed out and therefore a correct interpretation of the contract would entitle a client to a commission as of October 11, 2011. On that view, what's the significance of the words as per the agreement? As per the agreement, Your Honor, there's a Schedule A to the agreement and it indicates the amount of the sales commission, 4.8%. So as per the agreement, would tie in the amount of the commission to which Mr. Harris is entitled. It does not in any way say that the commission has to be paid, excuse me, that the commission is earned through a sale. If there was that requirement, then that The thing is it doesn't say as per the schedule in the agreement. It says as per the agreement. So why do we not think that includes the requirement to sell? Because Your Honor, if that were the case, then that particular sentence in paragraph four would be superfluous. It would have no meaning whatsoever. Not in the instance in which the acceptance occurs from a buyer who appears after the term of the agreement has expired. In other words, you have a six-month window post the agreement in which if you get an acceptance, that can still be good as per the agreement. In other words, if it ripens into a sale because the closing may occur after that six-month period. That seems to me a perfectly plausible way of understanding it. Your Honor, the actual language of that sentence, it says if during the term hereof or within six months from the termination. So if during the term hereof a purchase and sale contract is entered into, then my client is entitled to a commission. It doesn't require But then why would you have the closing requirement in the prior part of the agreement? Because the listing agreement provides several different, as the bankruptcy court noted, it provides several different paths for my client to But you're not going to have a closing without acceptance. Well certainly, Your Honor. But what I'm saying is that I thought there was a separate thing saying that one way you could get paid is if there's an actual sale. Yes, yes. But then you're saying separately you can get paid when there's an acceptance during the agreement? Yes, Your Honor. That's exactly what the listing agreement says. Why would you bother to have the provision saying that you can get paid when you get a sale? There will never be a sale without an acceptance. Well that's true, Your Honor. So you never need to reference a sale? No, Your Honor. That term, if there's a sale, a commission will be paid, that indicates certainly a time limit within which the commission gets paid. It defines a time for the commission to be paid. It doesn't You don't need to reference a sale for that to be true, do you? Well, the sale You're saying if an acceptance occurs within the duration of the contract, automatically you get paid? We're entitled to a commission. So if that's true, there's no reason to reference sale ever? That's not necessarily the case, Your Honor, because the way the listing agreement reads, a sale can occur, Mr. Harris gets paid. A purchase and sale contract is entered into, but perhaps never closes. There's no sale. But we don't need to reference a sale then, because if there was a sale, there had to have been a purchase and sale agreement. So acceptance takes care of it. So one way to think about it, since they talk about sale and acceptance, why wouldn't we read it to but knowing how long it can take to close, it would be kind of unfair to allow you to manipulate it. So they take the acceptance, draw out the closing, and then deny you the payment. Instead, you get a free pass as long as there's an acceptance six months afterwards. But there's always got to be a sale. That's the way the bankruptcy court interpreted the contract. That's how the district court interpreted the contract. What's wrong with that, I guess is what I'm saying. Because that sentence in paragraph four also provides a circumstance where a commission that broke is entitled to a commission if a sale never happens. If a sale was automatically required in every instance, there'd be no reason to have that sentence in the enlisting agreement, Your Honor. But that sentence, because you're saying because that sentence refers not only to acceptances that occur after it expires, but also to acceptances that occur during the period of the agreement. And it also covers situations where there's an offer, an acceptance, and the sale never happens. Now, the way the bankruptcy court looked at this is it said, well, certainly the sale didn't occur under this 2011 agreement. But that was because there wasn't really an offer and acceptance. So the bankruptcy court recognized that a sale is not essential. But the court said, well, it's not a critical factor here because the court said there really wasn't an offer and acceptance on terms acceptable to the seller, Oak Knoll. And the way the court came to that conclusion was that even though the purchase and sale contract contains all the terms that a normal purchase and sale contract would in terms of identifying parties, price, location, terms of default, you know, all title, everything else, even though it contained all those terms, it required the seller to provide clear marketable title to the buyer, which it was unable to do instantaneously upon the signing of the agreement because there were conditions placed on the property. There were rent restrictions. There was a prepayment penalty. There were some other conditions that the seller needed to negotiate out with the Connecticut Housing Authority before the property could be sold. But what we're saying, Your Honor, is the bankruptcy court got that wrong because it's that's a contract performance issue. It's not a contract formation issue. We're saying that once the contract was signed, October 11th, it was a firm obligation, binding obligation between the parties and that that obligated the parties to move in good faith and fulfill their obligations. My time's run out. Thank you very much, Your Honor. Good morning. My name is Daniel Cummings. I'm here for the Apelli Rosa Scarchelli. I'd like to first apologize for being tardy this morning, and I appreciate the accommodation and apologize to Mr. Mueller as well. As to the substance of the case, obviously, we believe that both the bankruptcy court and district court interpreted the contract correctly, that there is a requirement of a sale. The listing agreement is not a model of draftsmanship, to be sure, but nonetheless, it has multiple references to closing, a condition needed to close. Paragraph 2 says in order to protect the broker if there is a sale during the term, et cetera. I do believe that if, in fact, all that was needed was an acceptance of a contract, that there would be no reason to reference closing anywhere as a requirement or a condition or even an occurrence for that matter because the obligation to pay would arise immediately upon the signing of the purchase and sale agreement. In addition, I think the fact that the 2011 purchase and sale agreement was signed didn't entitle Mr. Harris to a commission in any event, even if you assume for the moment that the listing contract did not require a closing. In the Connecticut law, it says if you have a ready, willing, and able buyer to purchase on the terms that the seller is willing to sell, that's when the commission would become due. And it's clear that in this case there were non-permitted exceptions that could not be cleared off the property within the applicable time of the listing agreement. Just so I understand something about Connecticut law, is that a construction of whether there's a contract? If there's a ready, willing, and able buyer. In other words, is Connecticut law holding in that instance there's no contract if there's no ready, willing, and able buyer? I don't believe so, Your Honor. So how does that help you? Because what we're trying to figure out is whether there's an acceptance, which must mean is there a contract? Not under Connecticut law would the listing agent get paid. The question is, under Connecticut law, is there a contract? And if I assume if the buyer here was willing to tolerate the condition that proved to be problematic, the seller's bound. Yes. That suggests there's an acceptance because there's a contract at that point. There's a legal obligation at that moment of agreement. And so why doesn't that, for the purpose of interpreting this text, suggest there's acceptance of some kind because what was created was a legally binding contract? Sure. And the execution of the purchase of the salesman, I can't deny that that's the fact. So what is the relevance of the Connecticut law that you're pointing to? Because I believe that Connecticut law determines that a broker, that's the moment that the broker's entitled to. Unless the parties come to a different agreement, manifest here by the language of acceptance. And since you're conceding there was an acceptance, why doesn't that just solve it? I suppose it could, but I don't believe that the word acceptance was merely the moment you sign the contract. It had to be something that ultimately turned out binding on the seller to have to sell the property, which is Mr. Harris's point, that he believes that that occurred at that time. I mean, that might support the requirement to read into the contract that there has to be a sale. In other words, if you read acceptance loosely like this, that might further your point that it would make sense to make. It would have to be something more substantive than simply. But that would be taken care of by the requirement that there be a sale at the end. Yes, it would be. And then you might think, well, then that six-month tail period, they were saying, well, an agreement like this, which is an acceptance, counts so long, even if it comes late, so long as it eventually ripens into a sale, even if it ripens into a sale late. Yes. I think that was the intent of that. I called it a tail provision. But I think it was designed to account for any sort of either bad luck. You brought somebody to the table right at the end of the term, but you can't get it closed sufficiently within the original term, but it nonetheless results in a closing to that buyer. Or it's somebody that you brought to the table during that time period who actually doesn't, you know, end up signing a binding purchase and sale agreement on terms that the seller will sell until a little bit after the end of the term, which they define as six months. So, yes, I do believe that provision was there in order to capture those, but not to pass up what I believe is a requirement contained in the contract, and that is there to be a closing. Ultimately, that's when you're going to get paid is if a closing results. We hired you to bring results. So here ultimately there was one. Yes. So then how do you deal with the continue to negotiate language? Why doesn't that save the claim for the payment? Because the negotiations ceased and were dormant for an extended period of time before they picked up again post-bankruptcy that ultimately ended up with another purchase and sale agreement executed in October of 2013. So the negotiations ceased. The six-month period had expired. This is the only thing I'm troubled with. How do we know they ceased? So I ventured into an agreement. Now I find out there's this condition that I don't want to accept. The other party goes away, tries to get rid of the condition or find some way to work it out. They then come back in contact with each other. Now they've reached, oh, there was a way around it. So how do I know that negotiations didn't continue versus they continued in the way that would make sense, which is until you can work it out, I don't think we've got a deal. Okay, I'm still trying to work it out. Hey, I've worked it out. Now we have a deal. Because there's no evidence that would suggest that that's what occurred. The evidence is there. It's the same parties, the same properties, the same everything. Sure. And it doesn't mean that people didn't come back to the table later. And ultimately it was the same parties. What I'm driving at is everything's the same except you don't want to pay the commission. No, no, because what occurred after was Connecticut Housing and Finance Authority got involved that hadn't been involved in a way before, that the broker hadn't brought to the table, the broker hadn't done the work that he indicated he would do with regard to bringing the parties together, and the deal fell apart and the parties were separated. What's the record show? So at the moment they discover this deal, the first deal is not working. Do we have anything in the record that says one party says to the other, I'm through with you, I'll get back to you? I mean, what do they say to one another when they discover that? What does the record show? Well, the record shows that there was no continued discussions and negotiations after, like, March of 2012. And then March of 2013 they said, give me my money back on the deposit, the buyer, the proposed buyer under the original purchase and sale agreement. So he waits until then to say that? Yes. And how long a period did he wait then? About a year. So he had waited a year before he asked for the money back. So we might say, I guess he was still thinking maybe something was going to work out until then. Then in March he says, I want the money back. And what's said back to him at that point? He was given the money back. And is there any evidence in the record of what was said between the parties when the money went back? There's evidence only in the letter requesting the money back that said, you know, we're not interested in buying under the terms of the purchase and sale agreement, and please return our money in essence. And then the next thing happens, we just see a check comes back? Yes. And then the next moment that they speak to each other is post-March, what, about a year later? No, I think any evidence would have been that fall. And what happens? What's the first contact according to the record in the fall? I can't recall because I think the record has e-mails that are running from, like, Mr. Harris to others other than the prospective buyers. I don't think there's any direct evidence with regard to that. So at least as of March, negotiations were not continuing once he gets the money back. Right. I think even before that there's nothing. I understand. But at least as of ‑‑ Yes. So unless there are any other further questions, I think that's all I wanted. Thank you.